## BOONE v. HOMESTEAD LOAN ASS'N.

### (Supreme Court, Special Term, Monroe County. April, 1893.)

1. LOAN ASSOCIATIONS—EARNINGS—PREMIUMS ON LOANS.

The articles of a loan association provide that, where several members apply for a loan, it shall be awarded at auction to the one paying the highest premium therefor, and that, in case the successful applicant neglect to take the loan, all losses, including loss of premium on a reaward of the loan, shall be charged against him. *Held*, that such premiums are gains before the loans are consummated, and are therefore "earnings," within Laws 1875, c. 564, providing that the trustees of loan associations may "declare dividends from time to time from its earnings, payable in such manner as may be provided in its articles."

2. SAME—MODE OF PAYING PREMIUMS.

The fact that such premium is retained out of the amount of the loan, instead of being paid by the borrower after the loan has been awarded to him, does not affect its character as money received by the association.

Action by Clara E. Boone against the Homestead Loan Association to have a mortgage canceled of record. Judgment for plaintiff.

Before Hon. GEORGE F. DANFORTH, Referee.

John Desmond, for plaintiff.
George W. Thomas, for defendant.

DANFORTH, R. The plaintiff became a member of the defendant association and a subscriber for 64 shares of its capital stock. Upon these shares the defendant loaned or advanced $6,720, and to secure its repayment the plaintiff, on the 23d day of February, 1887, executed her bond, and a mortgage upon premises then owned by her in fee. They were conditioned, so far as is now material, for the payment of $16 principal and $6.40 interest each week from the date of the mortgage until dues or installments of principal and dividends credited upon said shares should equal the principal sum intended to be secured. The complaint shows that prior to the 25th day of February, 1893, the plaintiff so far complied with that condition as to pay—First, the interest as it became due; second, $5,098 of the principal in money; and, third, $1,158.40 by dividends declared from time to time by the defendant's directors, and credited

to her; so that there remained unpaid only $463.60 of the mortgage debt. She tendered payment of that sum, gave notice of the withdrawal of her shares, and demanded a discharge of the mortgage. It was refused, and this action was brought to enforce her demand.

The facts stated in the complaint are not denied, and the only inquiry made necessary by the defendant's answer is as to the competency of its directors to declare and credit those dividends in reduction of the plaintiff's indebtedness; or, stated more specifically, the substantial question raised is whether certain premiums offered by members of the association for an award of loans, and paid by reserving the amount offered from the loan awarded and made, fall within the description of earnings contemplated by the statute under which the defendant was incorporated,—Laws 1851, c. 122, as amended in 1875, c. 564, and in 1878, c. 96. If they do, then may they properly be treated—First, as a present profit, or second, must their application be postponed until the mortgage is paid, or, third, applied periodically in such proportions as the past time of the loan bears to its unexpired time, or as the installments of principal paid bear to those yet to mature. The statute referred to makes provision for two classes of members in such associations as come within its terms,—one, investors who desire the accumulation of a fund to be returned to them; and another, borrowers, who would desire advances or loans. It also assumes that for the advantage of both classes entrance and other fees, fines, and penalties will be imposed, and interest on loans exacted, and declares that neither of those things, nor the making of any monthly payment required by the articles of association, or of any premium for loans made to members, shall be deemed a violation of any statute against usury. Section 7, Act 1851, supra. The same section prescribed a time for the termination of such corporation, and prohibited "any dividend" of principal or of profits until such termination, or "until its debts had been paid or otherwise sufficiently provided for." Under that act it is plain the questions now presented could not have arisen. In 1875, however, the section referred to was so amended (chapter 564, Laws 1875) as to permit the "trustees of such company to declare dividends from time to time from its earnings, payable in such manner as may be provided in its articles."

It is not contended that the constitution or articles of association of the defendant contravene the laws of the state, or contain provisions other than those necessary for the convenient and effective conduct of the business which it might, within the purview of the statute, fairly transact. By those articles its capital stock is divided into shares of $105 each, payable in weekly installments, and various sources specified from which income or earnings might accrue. They also declare that, with certain exceptions, all moneys received by the association shall be loaned to its members upon interest; that every shareholder shall be entitled to a loan of $105 for each share held by him when—First, there is sufficient money in the treasury, and, second, the security offered is satisfactory to the board of directors. Article 10, § 2. In all cases, then, the want of the borrower is restrained by these two contingencies. The

same article anticipates another contingency, viz. more than one applicant and not enough money to supply all their applications. It therefore provides: Third, in case there are several members applying for a loan at the same time, it (that is, the loan) shall be awarded to the member paying the highest premium therefor. Who that member is, is to be ascertained by offering the loan at auction, and the manner of bidding is provided for. Under these circumstances, it is not enough for the applicant to be a member of the association; that relation only serves to distinguish him from the community at large. He must also have a position of pre-eminence as to his associate members. That could be insured only by successful competition. Other applicants must be outbid, and the price for this new, and, as to other members, independent and purely incidental, relation is the sum bid, or premium. There are thus two relations between the successful competing member and the association. Each has been entered into for a separate consideration,—entrance or admission fee paid for membership, a premium or a price paid for a preference which clothed him with new rights as the purchaser of the loan. These, however, only qualified him to enter into a third relation with the association,—that of borrower. At the termination of the auction sale the association was entitled to the sum bid, and the loan awarded was at the risk of the applicant. It is provided (article 10, § 3) "that, in case a member to whom a loan is awarded neglects to take the same and give the required security, all losses accruing from such neglect shall be charged against him, be a lien upon his stock, and the money remain at the disposal of the association." Those losses are defined as including deficiency of premium upon a reaward of such loan, and interest upon the loan to the time of reaward. These penalties are imposed as damages for neglect, and not compensation for the use of money. If, however, he takes the loan which he has bid for, he must execute a bond for its amount, and secure it by first mortgage upon real estate. By so doing, the second transaction—one of lending and borrowing—is completed. It supersedes that which preceded it, and leaves the borrower under no other obligation than to make repayment of the principal in a prescribed mode, and, until it is repaid, to pay interest upon the loan. The membership fee on each share, the premium for the award of the loan, are gains before the loan is consummated, and are therefore earnings of the association.

Another rule of the defendant (article 15) declares that "the board of directors shall at each quarterly meeting ascertain the net profits of the association for the previous quarter, from which they shall declare a dividend, and cause the same to be credited to each shareholder, borrower, and depositor," but "payable only on a withdrawal of all the stock represented by the account book of the withdrawing member, presented with the notice of withdrawal." It appears that under this rule the directors have determined the amount of profits by including membership or entrance fees, fines, transfer membership fees, surplus profits from the previous quarter, and premiums received during the then current quarter. The argument

of the defendant proceeds upon the assumption that these premiums are not in fact received, but enter into the bond and mortgage, and are paid from time to time as the installments called for by the instruments mature. If that be so, there would be abundant reason for calling the premiums to some extent "unearned." It appears, however, the association, before paying over the amount of the loan, deducted the premium from the sum awarded, and delivered to the borrower the residue. It actually had the premium in hand. The contract on the part of each was to pay money; the bidder to pay the premium, the lender to pay or to advance the full amount of the loan awarded to the borrower. Either party could have insisted on such performance of the contract. Had they done so, no one, I suppose, would deny that the premium—the whole of it—could be accounted as so much money gained or earned. Its payment would have formed no part of the mortgage obligation. The parties were not bound to insist upon this method. The course they did adopt led to the same result. There was reason and natural equity in that mode of proceeding. It was a simple matter of compensation, and avoided the circuit of two actual payments. Both were implied, and it was not necessary that they be formally made. A similar transaction, although raising a different question, was interpreted by the court of appeals in the case of Association v. Read, 93 N. Y. 474, a body incorporated under the statute above referred to. There was an auction sale, and "a highest bidder," a loan made according to the award. The premium was deducted from the sum loaned, and the balance only was actually paid to the borrower; but, "say the learned court," the whole sum was loaned or advanced, and out of it he paid the premium, which went into the treasury of the association for the benefit of all stockholders. Such was the case here. See, also, McLaughlin v. Association, 62 Ind. 275. The directors of the association do not seem to have exceeded their authority in the declaration of dividends, and the plaintiff is, I think, entitled to the relief demanded, with costs.